EASTMAN KODAK CO. *v.* UNITED STATES (No. 4169)[1]

---

[1] C. A. D. 34.

# 316

United States Court of Customs and Patent Appeals, January 23, 1939

*Hubbell, Taylor, Goodwin, Nixon & Hargrave (Edward I. Cristy* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Daniel G. McGrath*, special attorney, of counsel), for the United States.

[Oral argument December 8, 1938, by Mr. Cristy and Mr. McGrath]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

LENROOT, JUDGE, delivered the opinion of the court:

Between December 18, 1935, and January 5, 1937, appellant made three importations from Canada, consisting of bales of sensitized photographic paper scrap, made up of trimmings, clippings, and rejected sheets, from the operation of appellant's Canadian photographic plant; all of the paper contained a coating of an emulsion of silver. Three entries were made of the respective importations at the port of Rochester, N. Y. The merchandise was classified by the collector under the provisions of paragraph 1555 of the Tariff Act of 1930 as "Waste, not specially provided for" and assessed with duty at the rate of 10 per centum ad valorem. Appellant filed protests covering each of said entries and claimed the merchandise to be free of duty under paragraph 1734 of said tariff act as sweepings of silver, or, in the alternative, free of duty under paragraph 1750 as stock for making paper.

The three protests were consolidated for the purposes of trial by the Customs Court and judgment was entered overruling the claims in all of the protests. From the judgment so entered this appeal was taken. The paragraphs of said tariff act here involved read as follows:

PAR. 1555. Waste, not specially provided for, 10 per centum ad valorem.

PAR. 1734. Ores of gold, silver, or nickel; nickel matte; nickel oxide; ores of the platinum metals; sweepings of gold and silver.

PAR. 1750. Rag pulp; paper stock, crude, of every description, including all grasses, fibers, rags, waste (including jute, hemp, and flax waste), shavings, clippings, old paper, rope ends, waste rope, and waste bagging, and all other waste not specially provided for, including old gunny cloth and old gunny bags, used chiefly for paper making, and no longer suitable for bags.

The issue is whether the imported sensitized photographic paper clippings, in the coating of which there is silver in the form of an emulsion, are properly free of duty either as "sweepings of * * * silver" under paragraph 1734, or as "paper stock * * * including * * * clippings" under paragraph 1750, or are dutiable as "Waste, not specially provided for" under paragraph 1555, as classified by the collector.

Upon the trial before the Customs Court two witnesses testified on behalf of appellant and a sample of the merchandise was introduced in evidence. The Government offered no evidence.

One Edward H. Woodworth testified that he was the general superintendent of appellant's said Canadian plant. With respect to the character of the involved merchandise he testified as follows:

Q. Will you please describe, Mr. Woodworth, what the imported merchandise consisted of?—A. It is silver scrap which is unfit for use. It is paper scrap, sensitized paper scrap, containing silver which is unfit for use because of some defect.

Q. What is that paper scrap and paper clippings derived from in your plant?— A. From either the paper coating department where the paper has a coating emulsion put on it, or the paper packing department where the paper is cut to size, or in the testing department where it is tested.

Q. What is the form that the merchandise is imported in? Is it in barrels?— A. It is baled, 400 pounds to the bale, a little less maybe, 390.

Q. All that scrap paper is made up in bale form and shipped into the United States that way?—A. Yes.

Q. Is there anything else you can tell us about how this paper scrap is derived from your manufacturing processes, other than what you have already described?—A. It comes from the paper coating department because of defects in coating due to streaks and spots. We have about forty different varieties. They sometimes cut out those defects in the paper coating department. But the great part of this scrap comes from the paper packing department where the paper is put in rolls and from the rolls cut into sheets, large sheets, and then the large sheets are cut down into smaller sheets. The large sheets are inspected and are thrown out for certain defects and those defects have to be culled out later. Those clippings are waste commodities which are classified as paper sweepings and put into bales and shipped to the United States.

Upon cross-examination the witness testified as follows:

X Q. And when these paper clippings get here to the United States what do you do with them, please?—A. In the United States?

X Q. Yes.—A. I am not familiar with how they recover the silver here.

X Q. You know what happens to it, don't you?—A. Do you mean me to give it by hearsay?

X Q. No, sir. If you know what happens to these paper clippings after they leave your plant in Canada, I would like to know it.—A. I feel I can say, from what I know, that they are washed in an emulsion in some process and the recovery of silver is made from that emulsion.

X Q. Is that, so far as you know, the only purpose for which this paper is used after it is imported in this country?—A. No. They also recover some of the paper stock. What proportion, I don't know.

X Q. That so-called paper stock is not the chief use for which this merchandise is imported?—A. No.

X Q. It is chiefly imported, as I understand, to recover silver?—A. Yes.

X Q. And an incidental use may be paper stock?—A. Yes.

X Q. These paper clippings are all clippings of photographic paper, coated; are they not?—A. Yes.

\*　　\*　　\*　　\*　　\*　　\*　　\*

R. X Q. Just one question. In your plant in Canada where these clippings of photographic paper are found, are there any precious metals worked there from which these paper clippings would be the waste or residue?—A. You are talking just about paper clippings?

R. X Q. Yes.—A. No.

R. X Q. Are there any precious metals worked there.—A. We make silver nitrate.

R. X Q. And you may have a residue or waste from such process?—A. Yes.

R. X Q. It would not be anything like these paper clippings?—A. No.

One Gerould T. Lane testified that he was connected with the Eastman Kodak Co. at Rochester, N. Y. He described the process of recovering the silver from the involved merchandise. He further testified as follows:

Q. But the two products you receive from this recovery process are: first, silver, and second, some paper pulp?—A. I don't know about first and second. There are two we get.

Q. I don't know anything about the order. But those are the two products you receive?—A. Silver and paper pulp, yes.

Q. Are any other by-products derived from this recovery process?—A. None.

Q. Those are the only two?—A. Except what little strawboard might be obtained. Five per cent of strawboard might be taken out and sold.

Q. The purpose of these importations is simply as you have described, to recover those two products.—A. That is right.

Upon cross-examination the witness testified in part as follows:

X Q. Are there any processes involving the working on metals which produces the merchandise in this case?—A. You are speaking about its production in the Canadian plant?

X Q. Yes.—A. Of course, I am not familiar with the Canadian plant, itself, but I know it is the same operation that we have at Kodak Park.

X Q. Have you seen that paper produced?—A. I have seen the paper coated; I have not seen the materials made.

X Q. Have you seen the clippings made over from a waste product?—A. Yes.

X Q. You don't know whether they are the result of any workings on metal?—A. In producing the paper metallic silver is put in the paper, and a silver anhydride must be used. But what you mean by the term "working" is not clear to me. If I could have a definition of your term "working" it might help.

X Q. Does the Canadian company to produce these photographic paper clippings have any working operations on precious metals of any kind?—A. On silver.

X Q. And working on silver produces paper clippings?—A. It produces sensitized photographic paper. The clippings are a by-product.

X Q. The silver is in the form of an emulsion or coating on this photographic paper?—A. Yes.

X Q. And the clippings are produced by making paper?—A. Either in the cutting or if the coating is defective.

X Q. You contend that this merchandise is sweepings of silver and not sweepings generally?—A. Not of metallic silver.

X Q. It is paper sweepings?—A. It is sweepings of something that contains silver in compound form.

We are in agreement with the conclusion of the trial court that the involved merchandise was properly classified by the collector.

In the case of *United States* v. *Henderson*, 5 Ct. Cust. Appls. 62, T. D. 34097, this court had occasion to consider the meaning of the term "sweepings of gold and silver," as used in the tariff act of 1909. The merchandise there involved consisted of sweepings resulting from the buffing of silver. Sawdust was scattered on the floor to pick up the silver, and the involved merchandise consisted of sawdust with a solution of silver sweepings saturated and mixed through it. The court in its decision stated:

\* \* \* There is nothing in the record showing a commercial designation applicable to the imported merchandise or other meaning than as embraced within the natural signification of the words of the statute. The signification of those words as naturally suggested to the mind are in accord with the lexicographic definitions of the same. Thus in the Standard Dictionary "sweepings" are defined as follows:

The refuse from the floors of an establishment in which precious metals are worked or handled, preserved to reclaim particles of gold or silver.

Knight's American Mechanical Dictionary (Vol. III) defines "sweep washings" as follows:

The refuse of shops in which gold and silver are worked. These metals are separated by mechanical means and amalgamation.

Webster's Dictionary defines "sweepings" as follows:

The sweepings of workshops where precious metals are worked, containing filings, etc.

While there may be some rubbish or refuse in which this silver is lodged which otherwise might be characterized as waste, this importation, however, is precisely within the definitions of that class of waste made free by paragraph 643, *supra*. The record is uncontradicted that the only valuable content of the importation is the silver. The merchandise is imported in order that its silver content may be reclaimed. It is in perfect harmony, therefore, with the provisions of the free list making ores of gold and silver free (paragraph 643) that sweepings containing a silver content should be made free.

We think it is clear from the foregoing that Congress intended that the term "sweepings of \* \* \* silver" should be confined to sweepings of silver originating and collected in establishments where silver is worked or handled, and where the sweepings result from such work or handling.

The clippings here involved were not the result of either working or handling silver. They resulted from the manufacture of sensitized paper which has a coating containing silver.

We think it cannot be successfully argued that applying to paper a coating which contains silver is a working or handling of silver within the meaning of the dictionary definitions of "sweepings".

Furthermore, this same question was involved in the case of *Handy & Harman* v. *United States*, T. D. 27849, 13 Treas. Dec. 51, decided by the Board of General Appraisers (now the United States Customs Court) in January 1907. There, as here, photographic paper trimmings were involved. They were classified as waste under paragraph 463 of the tariff act of 1897. The merchandise was claimed to be free of duty as "sweepings of silver" under paragraph 1629 of the same act. These two paragraphs were substantially similar to the provisions of paragraphs 1555 and 1734, respectively, of the Tariff Act of 1930. The Board of General Appraisers held that the merchandise was not "sweepings of * * * silver," but that it was properly dutiable as waste.

Appellant contends that a decision of the Board of General Appraisers in the case of *Handy & Harman* v. *United States*, T. D. 36924, 32 Treas. Dec. 9, decided in 1917, in effect overruled the earlier case of *Handy & Harman* v. *United States*, *supra*. We are not of that opinion. Said 1917 decision involved the classification of certain waste material from "manufacturing jewelers, silversmiths, and silverplate companies," imported for the purpose of extracting and reclaiming the silver contained therein. In that case the record in the trial court in the case of *United States* v. *Henderson*, *supra*, was incorporated as a part of the record in the case before the court.

It would seem clear that the merchandise involved in said later *Hardy & Harman* case was in all respects similar to the merchandise involved in the *Henderson* case, and was dutiable as "sweepings of * * * silver," but in addition, the Board of General Appraisers found that the importers had established a commercial designation of the term "sweepings" which included the merchandise there involved.

It thus appears that there is no conflict between the decision in the later case and the decision in the earlier case of *Handy & Harman* v. *United States*, *supra*, and both of said decisions are in harmony with our decision in the case of *United States* v. *Henderson*, *supra*.

Congress has had ample opportunity to enlarge or extend the meaning of the term "sweepings of * * * silver," as defined by this court and by the Customs Court, so as to include merchandise of the character here involved. Not having done so, it must be presumed that such decisions correctly interpreted the congressional intent in the enactment of the provision for "sweepings of * * * silver," and that such term does not include merchandise of the character here involved.

With respect to the alternative claim of appellant, that the merchandise is free of duty under paragraph 1750 as "paper stock * * * including * * * clippings," it is sufficient to say that there is no

evidence that the imported merchandise is chiefly used for paper making, but on the contrary the evidence shows that its chief use is for the recovery of the silver therein. It follows therefore that it could not be properly classified under paragraph 1750. *National Sanitary Rag Co.* v. *United States*, 23 C. C. P. A. (Customs) 200, T. D. 48051.

Appellant's counsel contends that, since the law permits importation of paper stock and clippings free of duty, and the importation of silver ore and silver sweepings free of duty, and it being established that the chief purpose of importing the involved merchandise was to recover the silver therein, there is no logical reason why the involved merchandise should be subject to duty, and points out that the trial court so declared. With this statement we are in agreement; but the illogical situation was created by Congress. It has not seen fit to provide for free entry of merchandise of the character here involved, and for either the Customs Court or this court to remove the inconsistency created by Congress would not be judicial interpretation but judicial legislation, a field that the judicial branch of the Government may not enter.

In appellant's appeal error is assigned in the exclusion of certain evidence by the trial court, but upon the oral argument before us appellant's counsel expressly waived this assignment of error.

For the reasons herein stated, the judgment of the trial court is *affirmed*.